United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Carol J. MacDonald, | NO. C 03-03538 JW |
| Plaintiff(s), | **ORDER DENYING ZURICH'S MOTION FOR SUMMARY JUDGMENT; DISMISSING PLAINTIFF'S NEGLIGENCE CLAIM; AND DEEMING MOOT ZURICH'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S NEGLIGENCE CLAIM** |
| v. | |
| Zurich Life Insurance Company Of America, et al., | |
| Defendant(s). | |

## I. INTRODUCTION

This lawsuit arises out of an insurance coverage dispute between Plaintiff Carol MacDonald ("Plaintiff"), the beneficiary of her deceased husband's life insurance policy, and Defendants Zurich Life Insurance Company of America and Zurich Direct, Inc. (collectively "Zurich"), the insurers of that policy. Presently before this Court is Zurich's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment (hereinafter "Zurich's Motion," Docket Item No. 47.) This Court finds it appropriate, pursuant to Civil L.R. 7-1(b), to take Zurich's Motion under submission, without oral argument, for a decision based upon the parties' papers. For the reasons set forth below, this Court GRANTS in part and DENIES in part Zurich's Motion.

## II. BACKGROUND

On April 12, 2000, Plaintiff's husband, Arona MacDonald ("Mr. MacDonald"), telephoned Zurich to purchase life insurance. (Declaration of Carol J. MacDonald in Support of Plaintiff's

1 Opposition to Zurich's Motion, hereinafter "MacDonald Decl.," Docket Item No. 54, ¶ 5; Declaration
2 of Kurt Micklow in Support of Plaintiff's Opposition to Zurich's Motion, hereinafter "Micklow Decl.,"
3 Docket Item No. 55, Ex. 2 at 52:14-18.) Mr. MacDonald spoke with Larry Klingen ("Klingen"), an
4 Account Executive at Zurich. (Micklow Decl. Ex. 2 at 52:14-18.) Klingen's job responsibilities
5 included: fielding incoming calls to Zurich, "qualify[ing] applicants, suggest[ing] an amount of
6 coverage, and ask[ing] the potential clients if they would like to proceed and apply for the coverage."
7 (Micklow Decl. Ex. 2 at 13:20-25.) Klingen asked Mr. MacDonald a series of questions and
8 recorded Mr. MacDonald's answers into a computer system. (Declaration of Henry Wang in Support
9 of Zurich's Motion, hereinafter "Wang Decl.," Docket Item No. 47, Ex. A at 27:6-20.) Among other
10 things, Klingen asked Mr. MacDonald about his family's health history. According to Klingen, he
11 asked whether Mr. MacDonald "had a mother, father, brother or sister, including any half siblings, that
12 passed away prior to age 60 with coronary artery disease or cancer." (Wang Decl. Ex. A at 33:13-
13 16.) Klingen recorded Mr. MacDonald as stating that, "NEITHER parent NOR any sibling has ever
14 died of coronary artery disease prior to age 60." (Declaration of Lynn Patterson in Support of Zurich's
15 Motion, hereinafter "Patterson Decl.," Docket Item No. 47, Ex. A at ZUR0020.)

16 Thereafter, Zurich sent Mr. MacDonald a formal, written life insurance application, complete
17 with the information gleaned from Klingen's conversation with Mr. MacDonald. (See Patterson Decl.
18 Ex. A.) The application included Mr. MacDonald's representation that no sibling of his had ever died
19 of coronary artery disease prior to age 60. (See Patterson Decl. Ex. A at ZUR0020.) On May 24,
20 2000, Mr. MacDonald signed a statement representing that, "[T]he statements and answers made in all
21 parts of this application are true and complete to the best of my knowledge and belief." (Patterson
22 Decl. Ex. A at ZUR0021.) Furthermore, Mr. MacDonald agreed that, "All such statements and
23 answers shall be the basis for any insurance that may be issued." (Patterson Decl. Ex. A at ZUR0021.)
24
25 According to Plaintiff, after the application arrived, she and Mr. MacDonald discussed "the
26 fact that some of the questions and typed responses on the application were confusing and/or
27
28 2

United States District Court
For the Northern District of California

ambiguous to us." (Declaration of Carol J. MacDonald in Support of Plaintiff's Opposition to Zurich's Motion, hereinafter "MacDonald Decl.," Docket Item No. 54, ¶ 6.)  In particular, Plaintiff and Mr. MacDonald discussed Question #12, which required Mr. MacDonald to disclose his family's health history.  (See Patterson Decl. Ex. A at ZUR0019.)   Specifically, Question #12 required Mr. MacDonald to list his parents and siblings, to indicate whether they are living or deceased, to list their current age or age of death, and to indicate their current state of health or cause of death.  (See Patterson Decl. Ex. A at ZUR0019.)  The response to Question #12, as it was completed by Klingen, states "see remarks."  (See Patterson Decl. Ex. A at ZUR0019.)  The "Remarks" section of the application indicates that "NEITHER parent NOR any sibling has ever died of coronary artery disease prior to age 60."  (See Patterson Decl. Ex. A at ZUR0020.)  Plaintiff and Mr. MacDonald were unsure as to whether Question #12 required disclosure of half-siblings.  (MacDonald Decl. ¶ 8.)  Plaintiff and Mr. MacDonald "discussed whether . . . [they] needed to address the fact that [Mr. MacDonald] had a 'half-brother' named Charlie Tutaki who may have died of a heart attack in his late forties in New Zealand nearly twenty years earlier."  (MacDonald Decl. ¶ 8.)  According to Plaintiff, "We did not know if the term 'sibling' in the typed answer was supposed to include 'half-siblings' or not.  We also did not know whether Charlie had in fact died from a heart attack and if he did whether it resulted from 'coronary artery disease.'"  (MacDonald Decl. ¶ 8.)  Plaintiff and Mr. MacDonald did not resolve these issues because Mr. MacDonald told Plaintiff that "someone from the insurance company was going to be coming over to pick up the applications and we agreed to wait and speak with that person about these questions."  (MacDonald Decl. ¶ 9.)

Plaintiff claims that, on or about June 1, 2000, a gentleman from the insurance company came to her home to collect the finalized application and the premium checks.  (MacDonald Decl. ¶¶ 11-12.)  Plaintiff does not remember the gentleman's name, but describes him as "Caucasian with straight light-colored hair.  He was average height and medium build.  I would estimate his age to be 35-45 years old.  He had on a dress shirt (not white, I believe it was either light blue or yellow) with a tie, but no sport coat or suit jacket."  (MacDonald Decl. ¶ 13.)  Plaintiff and Mr. MacDonald met with the

3

1  gentleman for 30-45 minutes in their living room.  (MacDonald Decl. ¶ 14.)  Plaintiff and Mr.
2  MacDonald raised some questions regarding some of the pre-typed responses on the application.
3  (MacDonald Decl. ¶ 14.)  In particular, Plaintiff and Mr. MacDonald had a long discussion regarding
4  the pre-typed response to Question #12.  (MacDonald Decl. ¶ 14.)  They disclosed to the gentleman
5  Mr. MacDonald's half-brother, Charlie, and the circumstances surrounding his death.  (MacDonald
6  Decl. ¶ 16.)  According to Plaintiff, the gentleman assured her and Mr. MacDonald that the pre-typed
7  response to Question #12 was fine and that Mr. MacDonald "did not need to include any information
8  about Charlie's death . . . ."  (MacDonald Decl. ¶ 17.)  "He [the gentleman] said words to the effect
9  that we did not need to worry about that because Charlie was only a half brother and we were not
10 even sure as to his cause of his death."  (MacDonald Decl. ¶ 17.)  As the gentleman left the
11 MacDonald's home, Plaintiff recalls "telling him that references to Charlie dying from a heart attack
12 were in [Mr. MacDonald's medical records, including the records of the doctor identified on the
13 application, so that if Zurich had any questions they could call us after they got the doctor's records."
14 (MacDonald Decl. ¶ 17.)  The gentleman "said that that was fine and left."  (MacDonald ¶ 17.)

15        Zurich claims that it does not send any "agent, employees[,] and/or representatives to
16 personally take . . . application[s] in California."  (Declaration of John McIntyre in Support of Zurich's
17 Motion, hereinafter "McIntyre Decl.," Docket Item No. 47, ¶ 8.)  Accordingly, Zurich "did not send
18 any agent, employee, and/or representative to personally to [sic] take or pick up the application at
19 issue in this case."  (McIntyre Decl. ¶ 9.)

20        On May 8, 2001, Mr. MacDonald died of cardiopulmonary arrest due to ventricular
21 fibrillation and myocardial infarction.  (McIntyre Decl. Ex. 4.)  On May 29, 2001, Plaintiff called
22 Zurich to inform it of Mr. MacDonald's death and to file a claim.  (Declaration of Mary Beth Jachec in
23 Support of Zurich's Motion, hereinafter "Jachec Decl.," Docket Item No. 47, Ex. A.)  On June 1, 2001,
24 Zurich advised Plaintiff that, "Since this policy has been in force for less than two years, we do
25 require an investigation of this claim [pursuant to the Contestable Provision of the policy]."  (Jachec
26 Decl. Ex. B.)  As part of its routine investigation, Zurich obtained Mr. MacDonald's medical records.
27
28                                                    4

(Jachec Decl. ¶ 7.) Those records indicate that Mr. MacDonald had reported to his health care providers that he had a brother who died of myocardial infarction prior to age 60. (See Jachec Decl. Exs. F-I.) According to Zurich, "Had [it] known about [Mr. MacDonald's] family history of coronary artery disease[,] [it] would not have issued the policy as applied for." (Patterson Decl. Ex. C.) On August 14, 2001, Zurich wrote a letter to Plaintiff, in which it refunded to Plaintiff the $398 in premiums paid on Mr. MacDonald's policy and declared the policy "null and void." (Jachec Decl. Ex. K.)

Plaintiff filed suit against Zurich, alleging, inter alia, Breach of Insurance Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Fraud, Intentional Infliction of Emotional Distress, and Negligence. (See Complaint ¶¶ 19-44.)

### III. STANDARDS

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).

A movant for summary judgment always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323. If the movant does not satisfy this initial burden, the non-movant has no obligation to produce anything and summary judgment must be denied. If, however, the movant meets this initial burden, then the burden shifts to the non-movant to "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. In other words, to preclude entry of summary judgment, the non-movant must bring forth genuine issues of material fact. An issue of fact is "genuine" if it can reasonably be resolved in favor of either party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant

or unnecessary will not be counted." Id. In short, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).

It is this Court's responsibility "to determine whether the 'specific facts' set forth by the non-movant, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1997). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587. In conducting its analysis, this Court must draw all reasonable inferences in favor of the non-movant. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1991) (citing Anderson, 477 U.S. at 255).

## IV. DISCUSSION

### A. Breach of Contract

First, Zurich argues that it is entitled to summary judgment on Plaintiff's Breach of Contract claim because it lawfully rescinded the policy. (See Zurich's Motion at 10:4-13:20.) Zurich argues that Mr. MacDonald's failure to disclose his half-brother's death constituted a material misrepresentation. See Burns v. Prudential Life Ins. Co., 201 Cal. App. 2d 868, 869-70 (1962) ("A life insurance company is entitled to . . . demand a truthful statement of the applicant's medical history. Material misrepresentations or concealments in this respect are grounds for rescission of the policy."). Plaintiff counters that Zurich waived (or is estopped from asserting) its right to rescind. (Plaintiff's Opposition to Zurich's Motion, hereinafter "Plaintiff's Opposition," Docket Item No. 71, at 17:18-18:9.) In particular, Plaintiff claims that she and Mr. MacDonald directly informed the gentleman who retrieved Mr. MacDonald's application that Mr. MacDonald's half-brother may have died of a heart attack. (MacDonald Decl. ¶ 16.) That agent assured them that they did not need to formally disclose that information on the application. (MacDonald Decl. ¶ 17.) In doing so, Plaintiff argues, he waived Zurich's right to rescind. (See Plaintiff's Opposition at 17:22-24 ("Here, if Mrs. MacDonald's

testimony is accepted by the jury, there would be clear detrimental reliance on the insurance representative's statements so both waiver and estoppel would apply").)

Plaintiff has raised a genuine issue for trial. In Boggio v. California-Western States Life Ins. Co., 108 Cal. App. 2d 597 (1952), Plaintiff Eda Boggio ("Mrs. Boggio") filed suit against Defendant California-Western States Life Insurance Company ("Cal-Western") to collect on a life insurance policy issued by Cal-Western to Mrs. Boggio's deceased husband, Robert Boggio ("Mr. Boggio"). Cal-Western claimed that Mr. Boggio failed to disclose in his life insurance application a subarachnoid hemorrhage that he had suffered 10 years earlier, while in naval service. Boggio v. California-Western States Life Ins. Co., 108 Cal. App. 2d 597, 598 (1952). According to Cal-Western, this was a material misrepresentation that voided the policy. Id. Mrs. Boggio countered that Mr. Boggio had, in fact, fully disclosed his injury to Cal-Western's agent, but that the agent assured them that, "As long as [Mr. Boggio had] an honorable discharge [from the navy, which he did,] . . . you can sign this application." Id. The trial court found for Mrs. Boggio. Id. The appellate court affirmed, observing that, "To deny liability of the insurer in these circumstances would open the door to unrestrained fraud." Id. at 600. "Where the insured, in good faith, makes truthful answers to the questions contained in the application, but his answers, owing to the . . . mistake . . . of the agent filling out the application, are incorrectly transcribed, the company is estopped to assert their falsity as a defense to the policy." Id.

Here, the facts, when construed in the light most favorable to Plaintiff, parallel the facts in Boggio. Plaintiff consistently has maintained that a Zurich agent assured her and Mr. MacDonald that they did not need to disclose Mr. MacDonald's half-brother's death. (See, e.g., Jachec Decl. Ex. L at ZUR0323 (letter from Plaintiff to Zurich dated August 21, 2001 in which Plaintiff states that, "I was there when he [Mr. MacDonald] told your agent he had a half-brother who had died and that we thought he had a heart attack. . . . He told us he did not need to change what he had written up for remarks, because it was a half-brother and we weren't even sure of the cause of his death.").) Furthermore, there remain other outstanding factual issues that a trier of fact must resolve, such as:

7

whether a gentleman, in fact, traveled to the MacDonalds' home to retrieve Mr. MacDonald's finalized application and premium checks; whether that gentleman was Zurich's agent; and how, in fact, Zurich ultimately received Mr. MacDonald's finalized application and premium checks. See Am. Cas. Co. of Reading, Pennsylvania v. Krieger, 181 F.3d 1131, 1121 (9th Cir. 1999) ("In general, ostensible authority is 'for a trier of fact to resolve . . . . [It] should not . . . [be] decided by an order granting a summary judgment'") (citing Thompson v. Occidental Life Ins. Co., 276 Cal. App. 2d 559, 564 (1969)). Because a reasonable fact finder could find that Zurich waived its right to rescind, this Court denies Zurich's Motion for Summary Judgment on Plaintiff's Breach of Contract claim.

**B. Breach of the Implied Covenant of Good Faith and Fair Dealing**

Second, Zurich argues that it is entitled to summary judgment on Plaintiff's Breach of the Implied Covenant of Good Faith and Fair Dealing claim (1) because it rescinded the policy as a matter of law, and (2) because there is a genuine dispute as to the payment of benefits. See Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co., 90 Cal. App. 4th 335, 347 (2001) ("[W]here there is a *genuine issue* as to the insurer's liability under the policy for the claim asserted by the insured, there can be no bad faith liability imposed on the insurer for advancing its side of that dispute"); Austero v. Nat'l Cas. Co., 62 Cal. App. 3d 511, 515 (1976) ("[T]he duty of good faith and fair dealing derives from and exists solely because of the contractual relationship between the parties"). Both of these arguments are unavailing.

As an initial matter, this Court has held that there is a genuine issue of material fact regarding whether Zurich, in fact, rescinded the policy. See, supra, Part IV.A. Furthermore, this Court cannot say, as a definitive matter of law, that there is a genuine dispute as to Zurich's liability. See Adams v. Allstate Ins. Co., 187 F. Supp 2d 1219, 1226 (C.D. Cal. 2002) (noting that the genuine dispute doctrine is applied on a case-by-case basis). In other words, a reasonable fact finder that finds that Zurich, in fact, waived its right to rescind the policy could also find that Zurich's denial of Plaintiff's claim was in bad faith. Accordingly, this Court denies Zurich's Motion for Summary Judgment on Plaintiff's Breach of the Implied Covenant of Good Faith and Fair Dealing claim.

**C. Fraud**

Third, Zurich argues that it is entitled to summary judgment on Plaintiff's Fraud claim primarily because it is unsupported by evidence.[1] (Zurich's Motion at 18:3-11.) According to Plaintiff, Zurich's agent assured her and Mr. MacDonald that they did not need to disclose Mr. MacDonald's half-brother's death. (First Amended Complaint, hereinafter "FAC," Docket Item No. 23, ¶ 30.) Plaintiff and Mr. MacDonald submitted the application in reliance upon this assurance. (FAC ¶ 34.) Thereafter, Zurich represented that it would provide life insurance coverage on Mr. MacDonald's life. (FAC ¶ 30.) Plaintiff and Mr. MacDonald also relied upon this representation. (FAC ¶ 34.) As this Court reads Plaintiff's First Amended Complaint, Plaintiff alleges that Zurich's denial of Plaintiff's claim constituted fraud because it revealed that Zurich's purported waiver of its right to rescind and Zurich's representation of coverage were misrepresentations. Because there is a genuine issue of material fact as to whether, in fact, Zurich waived its right to rescind the policy, there is a genuine issue of material fact as to whether, in fact, there was a misrepresentation. See, supra, Part IV.A.; Cadlo v. Owens-Illinois, Inc., 125 Cal. App. 4th 513, 519 (2004) ("The well-known elements of a cause of action for fraud are: (1) a misrepresentation . . . ; (2) . . . scienter; (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance; and (5) resulting damages") There are also genuine issues of material fact as to scienter, intent, reliance, and damages. Accordingly, this Court denies Zurich's Motion for Summary Judgment on Plaintiff's Fraud claim.

**D. Intentional Infliction of Emotional Distress**

Fourth, Zurich argues that it is entitled to summary judgment on Plaintiff's Intentional Infliction of Emotional Distress ("IIED") claim because Zurich's actions were reasonable as a matter of law. (Zurich's Motion at 21:3-5.) Zurich premises its argument upon the fact that it consulted with Klingen prior to its purported rescission of the policy. (Zurich's Motion at 21:3-5.) Zurich misunderstands Plaintiff's IIED claim.

---

[1] The other arguments advanced in Zurich's Motion are unavailing because they are based upon an overly narrow reading of Plaintiff's Complaint.

9

1   As an initial matter, there is a genuine issue of material fact as to whether Zurich, in fact, rescinded the policy.  See, supra, Part IV.A.  Furthermore, Plaintiff's IIED claim arises out of Zurich's denial that an agent ever traveled to the MacDonalds' home--*not* whether Zurich consulted with Klingen.  (See FAC ¶ 37 ("Defendant Zurich Life implied to Plaintiff that she was imagining that someone came to her home.  Defendant Zurich Life refused to conduct any investigation whatsoever to determine which agent and/or representative of Defendants came to Plaintiff's home to obtain the completed application.").)  Because there is a genuine issue of material fact as to whether, in fact, a Zurich agent ever traveled to the MacDonalds' home, there remains a genuine issue of material fact as to whether Zurich's denial of that fact was extreme or outrageous.  See Ess v. Eskaton Properties, Inc., 97 Cal. App. 4th 120, 129 (2002) ("The elements of [IIED] are '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct'").  Accordingly, this Court denies Zurich's Motion for Summary Judgment on Plaintiff's IIED claim.

**E.  Negligence**

Fifth, Zurich argues that it is entitled to summary judgment on Plaintiff's Negligence claim.  (See Zurich's Motion at 21:24-23:13.)  In its Opposition to Zurich's Motion, Plaintiff states that she is willing to dismiss her Negligence claim against Zurich.  (Plaintiff's Opposition at 25:4-5.)  Accordingly, this Court dismisses that claim and deems moot Zurich's Motion for Summary Judgment on Plaintiff's Negligence claim.

**F.  Declaratory Judgment**

Finally, Zurich argues that it is entitled to summary judgment on Plaintiff's Declaratory Judgment claim because, "[b]ased on the undisputed material facts, and the foregoing discussions, Plaintiff's claim for declaratory [sic] fails as a matter of law."  (Zurich's Motion at 23:15-16.)  Plaintiff prays for judicial declarations that:  (1) Plaintiff disclosed Mr. MacDonald's half-brother's death to Zurich's agent; (2) Zurich's agent waived disclosure of Mr. MacDonald's half-brother's death;

10

(3) Zurich is bound by Zurich's agent's waiver; and (4) Zurich is estopped from rescinding the policy. (FAC at 18:15-19:6.) There are genuine issues of material fact as to each of these issues. See, supra, Part IV.A. Accordingly, this Court denies Zurich's Motion for Summary Judgment on Plaintiff's Declaratory Judgment claim.

### V.  CONCLUSION

For the reasons set forth above, this Court denies Zurich's Motion for Summary Judgment on Plaintiff's Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Fraud, IIED, and Declaratory Judgment claims. This Court dismisses Plaintiff's Negligence claim, and deems moot Zurich's Motion for Summary Judgment on that claim.

Dated:  May 31, 2005

03cv3538msj

/s/James Ware  
JAMES WARE  
United States District Judge

11

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Edward M. Bull ebull@banningmicklow.com
Geoffrey T. Tong gtong@manatt.com
Henry Chi-Jen Wang Hwang@manatt.com
Kurt  Micklow kmicklow@banningmicklow.com
Lois A. Lindstrom llindstrom@eakdl.com
Soonhyung Nancy Whang Nwhang@manatt.com

**Dated:  May 31, 2005**                                       **Richard W. Wieking, Clerk**

                                                                **By:/s/JWchambers                       **
                                                                    **Ronald L. Davis**
                                                                    **Courtroom Deputy**